FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2016 JUL 11 AM 10: 02
CLERK
SO. DIST. OF GA.

**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| TITAN CONSTRUCTION COMPANY, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | CASE NO. CV411-224 |
| CBC NATIONAL BANK, | ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is the question of Plaintiff's citizenship. The parties have each filed briefs detailing their respective positions. (Doc. 51; Doc 52.) For the following reasons, the Court determines that Plaintiff is a Georgia limited liability company ("LLC") and diversity has been properly established. Accordingly, the Clerk of Court is **DIRECTED** to return the record, and this order, to the Eleventh Circuit Court of Appeals for further proceedings.

### BACKGROUND

Turner's Cove was a planned residential community located on Wilmington Island, Georgia consisting of several lots. Plaintiff is a developer and construction company that obtained financing from First National Bank of Nassau County to develop the Turner's Cove subdivision. First National Bank of Nassau County is a division of Defendant. In June 2005, Plaintiff

executed a Deed to Secure Debt, Assignment of Rents and Security Agreement to Defendant in return for a construction loan guaranty of $1,600,000.00.[1] (Doc. 29, Attach. 1 ¶ 1.) In December 2005, Plaintiff again executed a Deed to Secure Debt, Assignment of Rents and Security Agreement in return for a construction loan guaranty of $2,800,000.00.[2] (Id. ¶ 2.) The June 2005 and December 2005, loans were renewed, modified and expanded through additional development and acquisition loans. (Id. ¶ 3.)

In September 2006, Defendant made a series of loans to Plaintiff for construction of specific residential units in Phase V of Turner's Cove subdivision, taking a separate Deed to Secure Debt on each particular lot. (Doc. 29, Exs. 3, 4, 5, 6, 7.) In May 2007, Plaintiff executed another Deed to Secure Debt, Assignment of Rents and Security Agreement to Defendant in return for a construction loan guaranty of $1,603,000.00. (Doc. 29, Attach. 1 ¶ 6.) This guaranty conveyed to Defendant fee

---

[1] This conveyance to Defendant was in fee simple for Lots 1 through 30 of Phase V of Turner's Cove subdivision, together with all of Plaintiff's rights, privileges and interests in the subdivision, including water and marshland rights, docks, waterways, improvements, all rights and privileges as a developer and member, all common areas, and other improvements. (Doc. 29-1 ¶ 1.)

[2] This conveyance to Defendant was again in fee simple for Lots 24 through 29 of Phase V of Turner's Cove subdivision. (Doc. 29-2 ¶ 2.) The conveyance expressly provided that it was made and intended to secure the payment of not only the recited indebtedness, but any and all modifications, extensions and renewals thereof, and all amounts due under any loan agreements, existing or to become due, by Plaintiff to Defendant. (Id.)

simple title to Lots 1 through 7 of Phase V of Turner's Cove subdivision. (Id.)

By the fall of 2008, Plaintiff defaulted on its obligations owed to Defendant. (Id. ¶ 7.) On June 4, 2009, Defendant's counsel sent Plaintiff and its guarantors a Notice of Maturity, Foreclosure and Attorney's Fees for the loans on subdivision Lots 2, 3, 5, 6, 7, and 24—the Lots still owned by Plaintiff. (Id. ¶ 8.) On July 7, 2009, Defendant held a foreclosure sale for Lots 2, 3, 5, 6, 7, and 24. (Id. ¶ 9.) Defendant was the high bidder for all six parcels. Defendant's bid amount for all six parcels totaled $3,266,738.18—the outstanding principal balance owed by Plaintiff on the six parcels, plus the expenses incurred by Defendant to maintain and complete the residential units, and the required taxes and assessments. (Id.) The parties agree that at the time of the July 2009 foreclosure sale, the balance owed by Plaintiff on the outstanding loans exceeded the bid amount. (Id. ¶ 12.)

Soon after the July 2009 foreclosure sale, Defendant realized the legal description of the property in each of the deeds consisted only of the lot number and reference to a plat describing the property conveyed. (Id. ¶ 13.) The property description in each of the Deeds to Secure Debt and Deeds Under Power of Sale referred to the intended lot by number, but then

3

described the specific property without any reference to any metes, bounds or directions, but simply a broad reference to

> A PORTION OF LOTS 1-7, [or Lots 24-30 in the case of Lot 24] TURNER'S COVE SUBDIVISION, PHASE V, Phase V being shown on that certain plat prepared by Kern-Coleman & Co., dated April 8, 2005, being recorded in the Office of the Clerk of the Superior Court of Chatham County, Georgia, in Plat Record Book 27P, Page 72, to which reference is hereby made for a more complete description thereof.

(Doc. 29, Exs. 2-7, 10-15.) The plat referred to was made before Turner's Cove subdivision had been completely subdivided and showed only an undivided parcel of land labeled "Lots 1 through 7" and another undivided parcel labeled "Lots 24 through 30." (Doc. 29, Attach. 1 ¶ 14.) Moreover, it is also undisputed that Plaintiff redrew the boundaries for Lots 1-7 after the Deed to Secure Debt on Lot 7 had been executed. (Id. ¶ 16.)

As a result, Defendant readvertised and conducted a second foreclosure sale on December 1, 2009 pursuant to other Deeds to Secure Debt, Assignments of Rents and Security Agreements. (Id. ¶ 18.) Defendant again was the high bidder at the foreclosure sale and purchased the foreclosed property pursuant to two Deeds Under Power of Sale that conveyed Plaintiff's interest in the property. (Id. ¶ 19.) Defendant's winning second sales bid totaled $3,266,738.18, the identical bid amount from the July 2009 foreclosure proceedings. (Id. ¶ 22.)

4

Plaintiff brought this action in the State Court of Chatham County, Georgia seeking to recover, as mortgagor, surplus monies from the two foreclosure sales. (Doc. 1.) Plaintiff contended that under O.C.G.A. § 44-14-190, it was entitled to recover the surplus amount from both foreclosure sales. (Id. at 8.) According to Plaintiff, Defendant received over $6 million from both the July 2009 and December 2009 foreclosure sales. After adjusting for the amount Plaintiff owed to Defendant, Plaintiff averred that it was due the excess amount—$3,142,351.83. (Id.) In addition, Plaintiff alleged theories of unjust enrichment and conversion, and sought attorney's fees and punitive damages. (Id.) On September 2, 2011, Defendant filed a timely notice of removal. According to the notice of removal, Plaintiff was a citizen of Georgia. (Doc. 1.)

Both Plaintiff and Defendant filed motions for summary judgment. On March 15, 2013, the Court entered an order granting Defendant's motion and dismissing Plaintiff's motion as moot. (Doc. 42.) On April 5, 2013, Plaintiff appealed. (Doc. 44.) During this appeal, Plaintiff alleged for the first time that one of its members—Anthony D. Adams—was a citizen of Florida. Because Defendant is a Florida bank, this would destroy diversity. On September 30, 2013, the Eleventh Circuit Court of Appeals granted Plaintiff's motion for reconsideration and

5

remanded the case to this Court to determine the citizenship of the parties at the time the action was filed. (Doc. 48 at 2.)

Both parties filed briefs containing factual allegations supporting their respective views of Mr. Adams' citizenship. Defendant argues that Plaintiff listed Mr. Adams as its registered agent on November 2011—after the complaint in this case was filed—and noted that his address was 785 King George Blvd. Suite 106, Savannah Ga, 31419. (Doc. 51 at 4-5.) Defendant has also provided records indicating that Plaintiff has not challenged the allegations that Mr. Adams resides in Georgia for cases pending before the Georgia state courts. (Doc. 51, Attach. 1 at 11-25.) Plaintiff however, presented the Court with an affidavit signed by Mr. Adams in which he states that he was a citizen of Florida on July 27, 2011 and had been a citizen of Florida for five years. (Doc. 52, Attach. 1.) Plaintiff has also presented a copy of a Florida driver's license that was issued on May, 29, 2009.[3] (Doc. 52, Attach. 2 at 4.)

## ANALYSIS

Generally, federal courts are courts of limited jurisdiction: they may only adjudicate cases over which they

---

[3] Plaintiff also provided copies of jury summons issued to Mr. Adams and certain pay stubs which indicate that Mr. Adams resides in Florida. (Doc. 52, Attach. 2 at 2-3.) However, both of these documents are dated after the date of filing for the complaint. Accordingly, they are neither dispositive nor relevant to the inquiry now at hand.

have been granted jurisdiction by the Constitution or Congress. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994). Specifically, federal district courts have jurisdiction over two types of civil actions: (1) those that involve a federal question, meaning the claim arises under the Constitution, laws, or treaties of the United States; and (2) those that invoke the court's diversity jurisdiction, meaning they involve an amount in controversy in excess of $75,000 and are "between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005) (citing 28 U.S.C. § 1332). In cases removed to federal court based on diversity jurisdiction, removal is permissible only "if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." Lincoln Prop. Co. v. Roche, 546 U.S. 81, 84 (2005).

The defendant, as the removing party, normally has the burden of proving the existence of federal subject matter jurisdiction. Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001). Where removal is improper, a party may move to remand the case back to state court. See 28 U.S.C. § 1447(c). All doubts about federal jurisdiction should be resolved in favor of a remand to state court. Burns v. Windsor Ins. Co., 31

7

F.3d 1092, 1095 (11th Cir. 1994). For the purposes of diversity jurisdiction, a LLC is a citizen of every state in which its members are citizens. Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1021-22 (11th Cir. 2004).

"Diversity jurisdiction is determined at the time the complaint was filed." Holston Invs., Inc. B.V.I. v. LanLogistics Corp., 677 F.3d 1068, 1070 (11th Cir. 2012) (citations omitted). "Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction." McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002) (citations omitted). Generally, domicile requires a showing of "(1) physical presence at the new location with (2) an intention to remain there indefinitely." Scoggins v. Pollock, 727 F.2d 1025, 1026 (11th Cir. 1984) (quoting references omitted). Under Georgia law, a registered agent of a LLC "must be an individual resident of Georgia, a corporation, or a foreign corporation having a certificate of authority to transact business in this state." Ga. Code. Ann. § 14-11-209.[4]

Plaintiff has provided Mr. Adams' affidavit stating that he was a citizen of Florida at the time of the filing of the suit. (Doc. 52, Attach. 1.) Plaintiff has also provided a copy of Mr. Adams' Florida driver's license that was issued prior to the time of the filing of this suit. (Doc. 52, Attach. 2.) To

---

[4] This provision has been amended by 2016 Ga. Laws 364. However, the requirement that the registered agent—if an individual—be a resident of the state of Georgia remains unchanged.

contest this position, Defendant provided Plaintiff's LLC documents indicating that Mr. Adams was Plaintiff's registered agent in Georgia at the time of the filing of this suit. (Doc. 51, Attach. 1.) Defendant has also provided records indicating that the Plaintiff has alleged that Mr. Adams resides in Georgia in other cases. (Doc. 51, Attach. 1 at 11-25.)

This is a very sparse record. Contra McCormick, 293 F.3d 1254, 1258 (making citizenship determination based on driver's license, employment records, real estate ownership information, voter registration, and income tax payments). Nevertheless, the Court concludes that Mr. Adams was a citizen of Georgia at the time of the filing of this suit. Plaintiff made multiple filings with the Georgia Secretary of State attesting to Mr. Adams' position as registered agent, which required that Mr. Adams reside in Georgia.[5] Moreover, Plaintiff agreed in multiple signed pleadings—both in this Court and in others—that Mr. Adams held this position and residency. The scant record Plaintiff provided to support its allegation that Mr. Adams is a Florida resident

---

[5] The Court notes that the Annual Registration for Titan Construction Company, L.L.C. filed on November 28, 2011—after the September 2, 2011 removal of this case to federal court—lists Mr. Adams as its registered agent. That document was signed by a Mr. Steve Adams. It states "a person who signs a document submits an electronic filing he or she knows is false in any material respect with the intent that the document be delivered to the Secretary of State for filing shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished to the highest degree permissible by law." (Doc. 51, Attach. 1 at 22.)

9

is simply not sufficient to overcome these facts. Because all of Plaintiff's members are citizens of Georgia, Plaintiff is a citizen of Georgia and diversity jurisdiction was proper in this case.

Plaintiff's recent allegations have left it in an unenviable position. Georgia registered agents are required by law to be residents of Georgia. Ga. Code. Ann. § 14-11-209. For purposes of this case, however, Plaintiff has alleged that Mr. Adams resided in Florida while acting as registered agent for Plaintiff. (Doc. 52 at 2.) Both of these positions are unlikely to be accurate at the same time. Plaintiff has not provided a suitable explanation for this incongruity, nor is the Court readily able to discern a justification for the conflicting positions.[6] While the Court does not assess fees or sanctions at this time, Plaintiff—and Plaintiff's attorney—are warned that the Court will not tolerate further obfuscation.

## CONCLUSION

For the foregoing reasons, the Court determines that Plaintiff is a Georgia LLC and diversity has been properly established. Accordingly, the Clerk of Court is **DIRECTED** to

---

[6] The Court notes that Plaintiff made similar allegations regarding Mr. Adams' position as registered agent—and therefore his residency—in cases filed in the Superior Court of Chatham County.

10

return the record, and this order, to the Eleventh Circuit Court of Appeals for further proceedings.

SO ORDERED this 11th day of July 2016.

	WILLIAM T. MOORE, JR.
	UNITED STATES DISTRICT COURT
	SOUTHERN DISTRICT OF GEORGIA